[No. D060048. Fourth Dist., Div. One. Nov. 30, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDALL KENT LOWE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

## COUNSEL

Chris Truax, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**McCONNELL, P. J.—**

### INTRODUCTION

Randall Kent Lowe appeals from an order under the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.)[1] (Act) committing him to the State Department of Mental Health for treatment and confinement in a secured facility for an indeterminate term. He contends the trial court prejudicially erred by permitting the People's experts to testify he was "likely" to engage in "predatory" sexually violent offenses in the future as these are legal issues and the experts' testimony invaded the jury's province. He additionally contends, like the appellant in *People v. McKee* (2010) 47 Cal.4th 1172 [104 Cal.Rptr.3d 427, 223 P.3d 566], his indeterminate commitment violates equal protection principles.

We conclude the expert testimony in this case did not invade the jury's province as the experts properly utilized statutory criteria to frame their opinions and they did not cross the line from testifying about the bases for their opinion to advocating for a particular outcome. We further conclude Lowe's indeterminate commitment does not violate equal protection principles. We, therefore, affirm the trial court's order.

### BACKGROUND

In 1998, Lowe pleaded guilty to committing both a lewd and lascivious act with a child under 14 years of age (Pen. Code, § 288, subd. (a)) and a forcible lewd and lascivious act with a child under 14 years of age (Pen. Code, § 288, subd. (b)). The victim was a six-year-old girl. The trial court sentenced him to 16 years in prison.

In 2010, near the conclusion of Lowe's incarceration, the People filed a petition alleging Lowe was a sexually violent predator under the Act and seeking his commitment to the State Department of Mental Health for an indeterminate term of involuntary treatment. To establish Lowe was a sexually violent predator under the Act, the People had to prove Lowe had been convicted of a sexually violent offense against one or more victims. The People also had to prove Lowe is dangerous because he has a diagnosed mental disorder that makes him "likely" to engage in "predatory" sexually violent criminal behavior in the future. Finally, the People had to prove Lowe

---

[1] Further statutory references are also to the Welfare and Institutions Code unless otherwise stated.

needed to be confined in a secure facility to ensure the health and safety of others. (§ 6600, subd. (a)(1); *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 243 [127 Cal.Rptr.2d 177, 57 P.3d 654]; CALCRIM No. 3454.)

At the trial on the People's petition, the parties stipulated Lowe's prior offenses were sexually violent offenses.[2] In addition, the People offered testimony from three psychologists, each of whom believed Lowe met the statutory criteria for classification as a sexually violent predator.

More particularly, Psychologist Deirdre D'Orazio testified Lowe's prior offenses were sexually violent offenses. He suffers from pedophilia, exhibitionism, and methamphetamine and alcohol dependence. He "presents a substantial likelihood to reoffend in a sexually violent way in [the] absence of appropriate treatment in custody." His new offenses would likely be "predatory" in nature, and he could not be effectively treated if released into the community.

Psychologist Dana Putnam similarly diagnosed Lowe with pedophilia and amphetamine dependence. In addition, Putnam testified Lowe was "likely to commit sexually violent predatory offenses in the future as a result of his diagnosed mental disorder without appropriate treatment in custody," and he "cannot be safely and effectively treated in the community."

Finally, Psychologist Steven Jenkins also diagnosed Lowe with pedophilia as well as amphetamine, alcohol, and marijuana abuse. Jenkins testified Lowe's pedophilia makes him dangerous, he is likely to engage in sexually violent predatory criminal behavior in the future and he "cannot be treated effectively and safely in the community."

Lowe countered with testimony from two other psychologists. Psychologist Richard Romanoff, with whom Lowe declined to interview, testified Lowe may have had a pedophilic disorder in the past, but there was insufficient evidence to determine whether Lowe still had the disorder. Romanoff additionally testified Lowe "falls below the threshold of having a serious and well-founded and substantial risk for reoffending." Psychologist Brian Abbott testified Lowe did not have a diagnosable mental disorder and does not present "a serious and well-founded risk" of committing a sexually violent offense in the future.

Before the jury began its deliberations, the trial court instructed the jury what the People must prove to establish Lowe is a sexually violent predator.

---

[2] A violation of Penal Code section 288 against a victim under 14 years old is a "sexually violent offense" as a matter of law. (§§ 6600, subd. (b), 6600.1.)

These instructions included informing the jury that, "A person is *likely to engage in sexually violent predatory criminal behavior* if there is a substantial, serious, and well-founded risk that the person will engage in such conduct if released into the community." (CALCRIM No. 3454.) These instructions also included informing the jury that "[s]exually violent criminal behavior is *predatory* if it is directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or a person with whom a relationship has been established or promoted for the primary purpose of victimization." (*Ibid.*)

Regarding the evaluation of expert witness testimony, the trial court instructed the jury, "[w]itnesses were allowed to testify as experts and to give opinions. You must consider the opinions, but you are not required to accept them as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence. [¶] If the expert witnesses disagreed with one another, you should weigh each opinion against the others. You should examine the reasons given for each opinion and the facts or other matters on which each witness relied. You may also compare the experts' qualifications." (CALCRIM No. 332.)

## DISCUSSION

### I

### *Expert Witness Testimony Claim*

Lowe contends the trial court erred in allowing the People's experts to testify he was "likely" to engage in "predatory" sexually violent offenses in the future because these are legal issues and the experts' testimony invaded the jury's province.[3] We review a trial court's decision to admit expert testimony for abuse of discretion. (*People v. Lindberg* (2008) 45 Cal.4th 1, 45 [82 Cal.Rptr.3d 323, 190 P.3d 664].) We discern no abuse of discretion in this case.

---

[3] For the same reasons, he also contends a trial court should not allow an expert to testify a past offense is a sexually violent offense. He acknowledges, however, this is not an issue in this case because he stipulated his past offenses were sexually violent offenses.

■ Expert opinion testimony is generally admissible if it relates to a subject sufficiently beyond common experience that the expert's opinion would assist the trier of fact. (Evid. Code, § 801, subd. (a).) Expert opinion testimony is not inadmissible merely "because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.) As the California Supreme Court explained, "There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case. 'We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . . Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in.' " (*People v. Wilson* (1944) 25 Cal.2d 341, 349 [153 P.2d 720].)

■ Nonetheless, expert opinion testimony may not invade the province of the jury to decide a case. (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 972 [105 Cal.Rptr.2d 88]; *Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178–1180, 1182 [82 Cal.Rptr.2d 162] (*Summers*).) Thus, expert opinion testimony that merely expresses a general belief as to how the jury should decide the case is not permissible. (*Id.* at pp. 1179–1183.)

This limitation does not, however, categorically preclude a qualified mental health expert from giving an opinion and explaining why a person meets or does not meet statutory criteria for classification as a sexually violent predator. (See, e.g., *People v. Dodd* (2005) 133 Cal.App.4th 1564, 1569 [35 Cal.Rptr.3d 692] [a qualified expert may give an opinion on the criteria necessary for committing a mentally disordered offender]; *People v. Valdez* (2001) 89 Cal.App.4th 1013, 1017 [107 Cal.Rptr.2d 783] [same]; *People v. Miller* (1994) 25 Cal.App.4th 913, 918 [31 Cal.Rptr.2d 423] [same]; but see *People v. Baker* (2012) 204 Cal.App.4th 1234, 1245 & fn. 9 [139 Cal.Rptr.3d 594] [a qualified expert may give an opinion on some mentally disordered offender criteria, but not criteria involving pure factual questions, pure legal questions, or questions outside the expert's competence].) The Act specifically contemplates the trier of fact will have the benefit of expert opinion and analysis. (See § 6603, subds. (a) & (c)(1) [both parties may obtain expert evaluations and present expert testimony].) Such opinion and analysis is unquestionably helpful to the trier of fact as the diagnosis, treatment, and prognosis of people suffering from mental and personality disorders is well beyond common experience. Moreover, as we previously recognized, "In civil commitment cases, where the trier of fact is required by statute to determine whether a person is dangerous or likely to be dangerous, expert prediction may be the only evidence available." (*People v. Ward* (1999) 71

Cal.App.4th 368, 374 [83 Cal.Rptr.2d 828]; accord, *People v. Bennett* (1982) 131 Cal.App.3d 488, 497 [182 Cal.Rptr. 473].)

Furthermore, the People's experts in this case did not merely express a general belief the jury should find Lowe to be a sexually violent predator. They explained in extensive detail why they believed Lowe met each criterion at issue. Included in their explanations were references to Lowe's personal and social history, his substance abuse and its disinhibiting effect, the circumstances of his crimes, the circumstances of other child molestations he committed, his past use of photographs and magazine cutouts of children for sexual stimulation, his postincarceration conduct, the results of actuarial assessments, and information gleaned during their interviews with him.

Additionally, the People's experts formed their opinions independently and, while they reached the same general conclusion, the specifics of and bases for their opinions varied. Because of this variance, as well as the contrasting opinions of Lowe's experts and the trial court's instructions on evaluating expert testimony, which we presume the jury followed (*People v. Davis* (2005) 36 Cal.4th 510, 537 [31 Cal.Rptr.3d 96, 115 P.3d 417]), the jury had to actually evaluate the expert testimony and not, as Lowe asserts, mindlessly adopt the People's experts' opinions.

■ The fact the People's experts utilized the statutory language to frame their opinions does not alter our conclusion. If the experts had not done so, the jury would not have known whether the experts' opinions were based on the appropriate criteria. As one court explained in response to a similar challenge in the analogous context of determining whether a person was not guilty by reason of insanity, "It is no more an invasion of the province of the jury for an expert to give his opinion that an accused is insane including the correct legal test than for him to give his opinion merely that the accused is insane, and none of the cases hold that it is an invasion of the province of the jury for the expert to give his opinion that the witness is insane. It cannot fairly be argued that any prejudice is caused the accused by allowing the jury to know the basis upon which the expert has reached his conclusions and the grounds therefor. On the one hand, if the jury does not believe the expert's opinion that the accused is insane merely, it will disregard the opinion. On the other hand, if the jury does not believe the expert's opinion that the accused knew the difference between right and wrong, it will likewise disregard the opinion; for the jurors are instructed that the question is for

them to decide and that they are not bound to accept the opinion of any expert as conclusive, and that they may disregard any such opinion if it shall be found by them to be unreasonable." (*People v. Woods* (1937) 19 Cal.App.2d 556, 562–563 [65 P.2d 940]; see *Sancom, Inc. v. Qwest Communications Corp.* (D.S.D. 2010) 683 F.Supp.2d 1043, 1052 [an expert may testify that a specific item or event fits within the meaning of a statutory term]; *Ways v. City of Lincoln* (D.Neb. 2002) 206 F.Supp.2d 978, 991 [same].)

*Summers, supra*, 69 Cal.App.4th 1155, upon which Lowe relies, is distinguishable for its extremes. The expert in the *Summers* case, a lawyer in the transportation field, went far beyond identifying the statutory criteria underpinning his opinions. He testified to "issues of law . . . almost too numerous to list," including that specific actions were illegal, specific contracts were illegal, and one party was liable for another parties' actions under the doctrine of nondelegable duty, respondeat superior and negligent hiring. (*Id.* at p. 1185.) Rather than provide the jury with information to consider and weigh in reaching a decision, the expert usurped the jury's role by weighing the evidence and drawing the conclusions himself. Essentially, the expert "was *advocating*, not *testifying*." (*Ibid.*)

■ Conversely, while the expert testimony in this case was necessarily framed by the Act's criteria, the People's experts focused their remarks on their individual assessments of Lowe's mental health and recidivism risk, the assessment methods they used, the research underlying the assessment methods, and the facts they believed were most probative of Lowe's mental health and recidivism risk. They did not compare or critique the other experts' opinions or otherwise attempt to weigh the evidence before the jury. Consequently, unlike the expert in *Summers, supra*, 69 Cal.App.4th 1155, the People's experts did not cross the line from testifying to advocating for a specific outcome, and the trial court did not err by allowing them to testify why they believed Lowe was "likely" to engage in "predatory" sexually violent offenses in the future.

II

*Equal Protection Claim**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 678.

## DISPOSITION

The order is affirmed.

Benke, J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 20, 2013, S207940.