Filed 9/18/13  P. v. Shamon CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062137 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. MH105983) |
| SIMON SHAMON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Charles G. Rogers, Judge.  Affirmed.

Chris Truax, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Simon Shamon appeals from an order under the Sexually Violent Predator Act (Act) (Welf. & Inst. Code, § 6600 et seq.) committing him to the State Department of

Mental Health, now State Department of State Hospitals, for treatment and confinement in a secured facility for an indeterminate term. He contends the court prejudicially erred by permitting the People's experts to testify he was "likely" to engage in "sexually violent predatory offenses" in the future as these are legal issues and the experts' testimony invaded the jury's province. He additionally contends, like the appellant in *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*), his indeterminate commitment violates equal protection principles. We conclude these contentions lack merit and affirm the order.

BACKGROUND

To establish Shamon was a sexually violent predator under the Act, the People had to prove Shamon had been convicted of a sexually violent offense against one or more victims. The parties stipulated Shamon previously pleaded guilty to and was imprisoned for forcible rape (Pen. Code, § 261, subd. (a)(2)) and forcible rape by a foreign object (Pen. Code, § 289, subd. (a)(1)). The parties do not dispute these crimes were sexually violent offenses and the court so instructed the jury.

The People also had to prove Shamon was dangerous because he had a diagnosed mental disorder that made him "likely" to engage in "sexually violent predatory offenses" in the future. Finally, the People had to prove Shamon needed to be confined in a secure facility to ensure the health and safety of others. (Welf. & Inst. Code, § 6600, subd. (a)(1); *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 243; CALCRIM No. 3454.)

To meet their burden, the People offered the testimony of two psychologists who evaluated Shamon. One diagnosed Shamon with schizoaffective disorder, exhibitionism, and polysubstance dependence. The other diagnosed Shamon with schizophrenia and

2

methamphetamine abuse. Both opined Shamon met the statutory criteria for classification as a sexually violent predator.

The doctors testified at length about the bases for their opinions. These bases included: the nature of Shamon's mental illness as well as his related auditory and visual hallucinations and his unwillingness to voluntarily take medication; the details of his rape offenses; the details of his other assaultive conduct before and during his incarceration; the fact his victims were strangers or casual acquaintances; his hypersexuality or sexual preoccupation, lack of impulse control, and disregard for consequences, as partially evidenced by his repeated violations of prison rules proscribing indecent exposure and public masturbation; his past drug abuse and stated desire to resume abusing drugs upon his release; his history of superficial relationships; lack of age- or health-related impediments to reoffending; and the results of multiple actuarial assessments.

Shamon countered with testimony from three other psychologists who evaluated him. The first psychologist initially diagnosed Shamon with a paraphilic disorder not otherwise specified (NOS), nonconsenting female; schizoaffective disorder, bipolar type; exhibitionism; methamphetamine dependence; and cannabis dependence. She also initially believed Shamon was a sexually violent predator. She later reevaluated him and decided he did not have a paraphilic disorder and, therefore, was not a sexually violent predator.

The second psychologist also diagnosed Shamon with schizoaffective disorder, bipolar type as well as amphetamine dependence. Although the second psychologist believed Shamon's disorder predisposed him to commit sexual offenses, she did not

3

believe he was likely to commit another sexually violent predatory offense in the future because the information in Shamon's records did not show Shamon preferred to have sex using force and violence.

The third, independently retained psychologist likewise diagnosed Shamon with schizoaffective disorder and methamphetamine dependence. She also diagnosed him with a cognitive disorder NOS and substance abuse NOS. However, she believed Shamon's mental disorder did not predispose him to commit criminal sexual acts and, consequently, he was not likely to engage in sexual violent predatory behavior in the future.

DISCUSSION

I

*Expert Witness Testimony Claim*

Before trial, Shamon moved to preclude the People from introducing expert testimony on whether Shamon's prior offenses were "predatory." The court denied the motion.

On appeal, Shamon contends the court erred by allowing the People's experts to testify he was "likely" to engage in "sexually violent predatory offenses" in the future because these are legal issues and the experts' testimony invaded the jury's province.[1]

---

[1] For the same reasons, he also contends a court should not allow an expert to testify a past offense is a "sexually violent offense." He acknowledges, however, this is not an issue in this case because of the parties' stipulation and the court's instruction regarding his prior offenses.

We recently rejected this same contention in *People v. Lowe* (2012) 211 Cal.App.4th 678 (*Lowe*).

In reaching our conclusion in *Lowe*, we first noted "[e]xpert opinion testimony is generally admissible if it relates to a subject sufficiently beyond common experience that the expert's opinion would assist the trier of fact. (Evid. Code, § 801, subd. (a).) Expert opinion testimony is not inadmissible merely 'because it embraces the ultimate issue to be decided by the trier of fact.' (Evid. Code, § 805.) As the California Supreme Court explained, 'There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case. "We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . . Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in." ' " (*Lowe*, *supra*, 211 Cal.App.4th at p. 684, citing *People v. Wilson* (1944) 25 Cal.2d 341, 349.)

We then acknowledged that expert opinion may not invade the jury's province and an expert may not express a general belief as to how the jury should decide a case. (*Lowe*, *supra*, 211 Cal.App.4th at p. 684.) However, we explained this limitation does not "categorically preclude a qualified mental health expert from giving an opinion and explaining why a person meets or does not meet statutory criteria for classification as a sexually violent predator. [Citations.] The Act specifically contemplates the trier of fact

5

will have the benefit of expert opinion and analysis.  [Citation.]  Such opinion and analysis is unquestionably helpful to the trier of fact as the diagnosis, treatment, and prognosis of people suffering from mental and personality disorders is well beyond common experience.  Moreover, as we previously recognized, 'In civil commitment cases, where the trier of fact is required by statute to determine whether a person is dangerous or likely to be dangerous, expert prediction may be the only evidence available.'  [Citations.]"  (*Id*. at pp. 684-685.)

As in *Lowe*, the People's experts in this case did not merely express a general belief the jury should find Shamon to be a sexually violent predator.  They explained in extensive detail why they believed Shamon met the statutory criteria for this classification.  Their explanations include references to Shamon's personal and social history, his substance abuse history, the circumstances of his prior rapes and assaults, his postincarceration conduct, actuarial assessment results, and other information gleaned during their interviews with him.  In addition, the People's experts formed their opinions independently and, while they reached the same general conclusion for the same general reasons, the specifics of their opinions varied.  This variance, along with the contrasting opinions of Shamon's experts, required the jury to carefully evaluate the expert testimony and not, as Shamon suggests, mindlessly adopt the opinions of the People's experts.  Accordingly, we conclude the court did not err by allowing the People's experts to testify

6

why they believed Shamon was "likely" to engage in "sexually violent predatory offenses" in the future.[2]

## II

### *Equal Protection Claim*

Like the appellant in *McKee I*, *supra*, 47 Cal.4th 1172, Shamon contends his indefinite commitment under the Act violates equal protection principles because he is subject to a greater burden to obtain release than persons committed under the Mentally Disordered Offenders Act (Pen. Code, § 2960 et seq.) or after being found not guilty by reason of insanity (Pen. Code, § 1026.5, subd. (a)). The California Supreme Court did not decide this issue in *McKee I*. Instead, it remanded the matter to us and directed us to remand the matter to the trial court for an evidentiary hearing to determine whether the People could demonstrate a constitutionally sufficient basis for the disparate treatment of people committed as sexually violent predators. (*McKee I*, *supra*, 47 Cal.4th at pp. 1208-1209.)

The trial court conducted the required hearing and determined the People met their burden of justifying the disparate treatment. We recently affirmed the trial court's decision on appeal. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1330-1331 (*McKee II*).) Specifically, we stated "the disparate treatment of [sexually violent predators] under the Act is reasonable and factually based and was adequately justified by the People at the evidentiary hearing on remand. Accordingly, we conclude the Act

---

[2]     Given our conclusion, we need not address the People's assertion that Shamon forfeited portions of his arguments by failing to raise them below.

does not violate McKee's constitutional equal protection rights." (*Id.* at p. 1348.) We based our conclusion on the People's evidence showing: (1) sexually violent predators bear a substantially greater risk to society than mentally disordered offenders and people found not guilty by reason of insanity; (2) sexually violent predators are significantly more likely to recidivate; (3) sexually violent predators pose a greater risk and unique dangers to particularly vulnerable victims, such as children; and (4) the diagnoses and treatment needs of sexually violent predators differ from mentally disordered offenders and people found not guilty by reason of insanity. (*Id.* at p. 1347.)

Shamon contends we wrongly decided *McKee II* because we did not require the state to show commitment under the Act was the least restrictive means of achieving the state's compelling interest. However, as we explained in *McKee II*, "We are unaware of any case applying the 'least restrictive means available' requirement to all cases involving disparate treatment of similarly situated classes. On the contrary, our review of equal protection case law shows [the prevailing standard is a two-part test requiring the state to establish] both a compelling state interest justifying the disparate treatment and that the disparate treatment is necessary to further that compelling state interest. [Citations.]" (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1349-1350.) Shamon has not persuaded us that our analysis was flawed, and at least one other appellate court has agreed with it. (*People v. McDonald* (2013) 214 Cal.App.4th 1367, 1380.) As our holding and reasoning in

8

*McKee II* applies to this case as well, we conclude Shamon's indeterminate commitment under the Act does not violate equal protection principles.

DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

McDONALD, J.

O'ROURKE, J.