Filed 10/20/21  P. v. Lee CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B306634 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA480420-01) |
| v. | |
| HYUNG JU LEE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig T. Mitchell, Judge.  Affirmed in part and remanded with directions.

Micah Reyner, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Paul M. Roadarmel, Jr. and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Hyung Ju Lee hit pedestrian Tae Jong Myoung with his car around midnight at an intersection in downtown Los Angeles. Myoung, who was seriously injured, had almost no memory of the incident. A jury convicted appellant of one count of driving under the influence of a drug causing injury (Veh. Code, § 23153, subd. (f)), based largely on the testimony of expert witnesses.[1] The jury found true the allegation that appellant personally inflicted great bodily injury on Myoung. (Pen. Code, § 12022.7, subd. (a).) The trial court sentenced appellant to eight years in prison; the sentence included a five-year enhancement for a prior serious felony conviction. (Pen. Code, § 667, subd. (a)(1).)

Appellant appeals from the judgment of conviction, contending the trial court abused its discretion in permitting Los Angeles Police Department (LAPD) Officer Johanes Gering to opine that (1) appellant was too impaired to drive at the time of the collision; (2) appellant should have been able to see the victim in the crosswalk and to slow down or yield to him; (3) appellant's impairment caused the collision; and (4) appellant failed to stop for the victim who was in an unmarked crosswalk in violation of section 21950, subdivision (a). Appellant further contends the trial court erred in imposing a five-year enhancement term because the jury did not consider or find true the allegation that he had suffered a prior serious felony conviction. Respondent agrees the allegation was not considered or found true by the jury or the court. We agree as well, strike the five-year enhancement term, and remand to permit the People to determine whether to

---

[1] Further undesignated statutory references are to the Vehicle Code.

try the allegation or have the court resentence appellant without it. We affirm the judgment of conviction in all other respects.

## BACKGROUND

Around midnight on April 21, 2019, Myoung left a bar at the intersection of 5th Street and Pico Boulevard and smoked a cigarette outside. Myoung was a regular customer at the bar. Although Myoung believed he had only a couple of beers at the bar, a subsequent blood test showed that his blood alcohol level was .243, which would be three times the legal limit for driving.

Un Pyo Lee (Un Pyo) owned and ran the bar. She went outside the bar at the same time as Myoung, who was a regular customer. Un Pyo told investigating officers that Myoung was drunk, so she took his key and tried to call a taxi for him. They walked outside because she had another customer waiting for a taxi. They all stood outside smoking. At trial, Un Pyo testified she left the bar to see off another customer in a taxi and Myoung "coincidentally" came out of the bar at the same time to have a cigarette.

According to Un Pyo, at some point, Myoung began to cross the street to go to his car. He left the corner and started to walk directly across the street but he was hit by appellant's car when he reached the center lane. Un Pyo did not see appellant's car before it hit Myoung because the car was going "so fast."

The impact sent Myoung flying a considerable distance through the air. Erik Calderon, who witnessed the collision, called 911. He told the operator: "A car ran into a man and sent him flying" and "He honestly ran over him real bad." Myoung was transported to a hospital. He subsequently underwent multiple surgeries over the course of a three-month hospital stay. He then underwent six months of physical therapy. At the time

3

of trial he required full-time care from family members. He had almost no memory of the night of the collision.

Officer Johanes Gering arrived at the scene about two hours after the collision. He was a Collision Investigator with specialized training in driving under the influence investigations. Officer Gering was more familiar with alcohol-induced impairment than narcotics-induced impairment, although he had some training and experience with narcotics. He requested the assistance of a drug recognition expert, but none were available.

Officer Gering asked appellant, who was sitting on a curb, if he was under the influence of any substance, including medication. Appellant replied, "just my Alprazolam," which had been prescribed for him. Appellant said he took 2 milligrams twice a day and had last taken the medicine at 6 or 7 p.m. Officer Gering asked him how long it took for the medication to "wear off." Appellant replied, "Three to four hours."

Officer Gering found appellant's speech slow, which was consistent with being under the influence of alcohol or drugs. The officer conducted a series of field sobriety tests on appellant and concluded appellant was under the influence of drugs or alcohol. He thought it was more likely drugs because there was no odor of alcohol on appellant, and appellant's pupils were much more constricted than typical for a person under the influence of alcohol.

Officer Gering placed appellant under arrest for being under the influence of a narcotic. The officer explained to appellant: "The testing that I asked you to do, you weren't able to demonstrate them as—, I asked you to demonstrate the test." He added: "[Y]ou were swaying back and forth when I was having you count to yourself. . . . you couldn't walk the line

4

correctly [when] I asked you to keep your heel to toe.  You had to use your hands to keep balance. . . . So those things are cues that tell me that you're possibly under the influence of, uh, a substance."

Two LAPD officers transported appellant to the Metropolitan Detention Center for a blood test, but the test was not possible.  They then took him to the Van Nuys jail for a blood test, but again a blood test was not possible.  Instead, the officers obtained a urine sample from appellant.

Urinalysis and testing revealed the presence of amphetamine and benzodiazepines, including diazepam (Valium) and alprazolam (Xanax).  Benzodiazepines are central nervous system depressants, as is alcohol.  Any of these substances can impair the ability of a person to drive safely.

At trial, Officer Gering opined that appellant "was too impaired to drive at midnight on April 21st;" it was "because of [appellant's] impairment that he struck Mr. Myoung with his car"; appellant committed a traffic violation when "he failed to stop for [a] pedestrian in an unmarked crosswalk," specifically he violated section 21950, subdivision (a); appellant should "have been able to see Mr. Myoung crossing the street in the crosswalk"; and appellant should "have been able to slow down or yield to Mr. Myoung walking across the street."

LAPD Traffic Collision Investigator Nicholas Sewell conducted an investigation and reconstruction of the collision. He determined that Myoung was struck while in the number 1 (center) lane of Pico just before Fifth Street, thus establishing that Myoung was hit in the unmarked crosswalk.  (All intersections have cross-walks; some are marked by paint lines and some are not.)  Officer Sewell agreed that "if you're driving

east on Pico Boulevard approaching the intersection of 5th [you are] supposed to yield to pedestrians who are crossing from the . . . southwest corner to the northwest corner of Pico Boulevard." The "failure to yield to pedestrian[s] would be in violation of the law" specifically "21958 [*sic*] V.C." which is the law concerning "failure to yield to a pedestrian in a marked or unmarked crosswalk."

Michael Takacs, a certified drug recognition expert, reviewed the bodycam footage of Officer Gering's tests, Officer Gering's notes, toxicology reports, and other information about the collision. He also listened to Officer Gering's trial testimony. Takacs concluded appellant appeared to be impaired by drugs and specifically under the influence of a central nervous system depressant. Takacs further opined appellant was under the influence of alprazalom two hours earlier, at midnight, and so would have been "impaired" while driving. This opinion was based in part on appellant's statement that he had taken what Takacs considered a large dose of alprazalom at 6 or 7 p.m. His opinion was confirmed by the toxicology report. Takacs acknowledged that a test to determine if an individual is under the influence of drugs typically involves more steps than the field sobriety tests administered by Officer Gering, but Takacs stated that under the circumstances of this case the omission of those tests did not affect his opinion that appellant was impaired.

Takacs explained that the "physical and mental symptoms [of alprazolam] that are shown are similar [to alcohol] because they do belong in the same class of drugs." Specifically, benzodiazapines such as alprazolam can produce slow reaction times, sluggish movement, slow or slurred speech, poor coordination, difficulty walking or turning, and sweating.

A driver under the influence of a benzodiazepine, "might have braking problems, problems maintaining [his] lane, problems navigating a turn, . . . drowsiness, inability to pay attention, [and] vigilance issues." It would be common to have slow reaction and response times, as well as to be less aware of one's surroundings.

In his defense, appellant called LAPD Officer Manuel Mendieta. The officer had responded to the scene of the accident after the 911 call. He spoke with appellant, who was cooperative. The officer testified that he had some "near misses" with cars while he was at the scene. He never had to get out of the way of a car, however.

Appellant also testified in his own behalf. He admitted that he had used amphetamines and Valium three days before the collision and took between .5 and 2 milligrams of Xanax at about 6:00 or 7:00 p.m. the evening of the collision. He had taken Xanax twice daily for about 10 years for an anxiety disorder. Xanax did not "knock [him] out." It made him "feel normal" for about four to six hours.

Appellant testified that as he was driving on the night of the collision, he saw a man "on a bicycle out [of] the left peripheral vision of [his] eye" and then hit the man. Appellant slammed on the brakes, got out of the car and saw a man on the ground about 10 yards in front of him. Someone told him not to touch the man. Appellant called 911 and stayed at the scene.

When police arrived, appellant cooperated. He felt the drugs in his system did not affect this driving and believed he passed the field sobriety tests with flying colors.

# DISCUSSION

A. *If Some of Officer Gering's Opinion Testimony Was Improperly Admitted, Any Error Was Harmless.*

Appellant contends the trial court abused its discretion in permitting Officer Gering to give the following expert opinions: (1) appellant "was too impaired to drive at midnight on April 21st;" (2) it was "because of [appellant's] impairment that he struck Mr. Myoung with his car"; (3) appellant committed a traffic violation when "he failed to stop for [a]pedestrian in an unmarked crosswalk," specifically violating section 21950, subdivision (a); (4) appellant should "have been able to see Mr. Myoung crossing the street in the crosswalk" and should "have been able to slow down or yield to Mr. Myoung walking across the street." Appellant objected to each opinion on the ground that it lacked foundation.

"A person is qualified to testify as an expert if he has special knowledge, skill, experience training or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) "The trial court's determination of whether a witness qualifies as an expert is a matter of discretion and will not be disturbed absent a showing of manifest abuse. [Citation.] ' "Where a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility." ' " (*People v. Bolin* (1998) 18 Cal.4th 297, 321–322.) "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.)

8

Officer Gering's opinion testimony was offered to show appellant violated section 23153. A conviction for violating that section requires proof that the defendant, while under the influence of a drug, drove a vehicle and concurrently committed an act forbidden by law or neglected a duty imposed by law in driving a vehicle and that act or neglect proximately caused bodily injury to another person. (See § 23153, subd. (f); see also *People v. Oyaas* (1985) 173 Cal.App.3d 663, 667.) Here, the trial court instructed the jury that it must find that appellant committed an illegal act, and that the People "allege that the defendant committed the following illegal act: the defendant failed to yield the right-of-way to a pedestrian crossing the roadway within an unmarked crosswalk at an intersection." Although such conduct is a violation of section 29150, subdivision (a), the trial court did not refer to that section in the instruction.

1. **Opinion about impairment at the time of the accident**

Appellant contends that since Officer Gering was not a certified drug expert and acknowledged that he had no knowledge concerning whether or when "the effect [of] the narcotic could be rising or lowering," the officer was not qualified to testify that appellant was impaired as the result of drug usage at the time of the collision, which occurred two hours before the officer conducted his field sobriety tests on appellant. Assuming for the sake of argument that Officer Gering was not qualified to opine on this subject, there is no reasonable probability that appellant would have obtained a more favorable outcome in the absence of the error. The prosecution also offered the testimony of a certified drug expert, Takacs, who formed the same opinion after listening to Officer Gering's trial testimony and reviewing

9

the bodycam footage of Officer Gering's tests, his notes, toxicology reports, and other information about the collision.[2]

### 2. Opinion about the causal connection between the impairment and the accident

Appellant contends that since Officer Gering was not qualified to opine that appellant was impaired when the accident occurred, the officer was necessarily unqualified to opine that the impairment caused the collision. Again, assuming admission of the testimony was erroneous, there is no reasonable probability that appellant would have received a more favorable outcome in the absence of the error.

Takacs explained that alprazolam was a benzodiazepine which was a "central nervous depressant and that's basically the class that alcohol also belongs to." He further testified that the "physical and mental symptoms [of alprazolam] that are shown are similar [to alcohol] because they do belong in the same class of drugs."

As Officer Gering explained, appellant's symptoms were consistent with being under the influence of alcohol. Even if Officer Gering were not an expert on whether narcotics could have caused appellant's symptoms, he was an expert on the symptoms themselves, as those symptoms were consistent with alcohol impairment. Thus, Officer Gering was qualified to opine

---

[2]    Although appellant complains that Takacs was not at the scene and did not evaluate him personally, he has offered no legal authority that such personal interaction is required for an expert to form an opinion. Nor has he explained why it would be required under the facts of this case, which include a videotape of Officer Gering's interactions with appellant. Accordingly, this claim is forfeited.

on whether the symptoms of impairment displayed by appellant caused the accident. Put differently, since Officer Gering was qualified to testify that alcohol-induced symptoms caused a collision, he was qualified to testify that identical but alprazalom-induced symptoms caused a collision. Generally, expert testimony is admissible to show that drug use impaired a defendant's driving. (See, e.g., *People v. Bui* (2001) 86 Cal.App.4th 1187, 1194–1197.)

### 3. **Opinion testimony about the Vehicle Code violation**

Appellant contends Officer Gering's opinion that he violated section 21950, subdivision (a) was outside the scope of the officer's knowledge and an improper legal conclusion. Officer Gering testified that appellant "failed to stop for [a]pedestrian in an unmarked crosswalk," and this conduct violated "[section] 21950(a) VC." Appellant complains that Officer Gering never testified to having knowledge of "where Myoung was standing when he was hit, how far he flew, or whether he acted recklessly in walking into traffic."[3] Appellant does not clearly describe Myoung's alleged reckless behavior, nor identify any evidence in the record which shows reckless behavior. Appellant appears to rely on the trial court's post-trial statement that the victim "stepped out into the street, most likely without even looking, and was struck."

---

[3] Appellant does not explain the relevance of how far Myoung flew and we do not consider this contention further.

a.   Facts showing the location of the initial impact

Officer Sewell, an expert collision investigator, had previously testified that Myoung was struck while in the number 1 (center) lane of Pico Boulevard just before Fifth Street, thus establishing that Myoung was hit in the crosswalk.  Thus, the record contained evidence of where Myoung was standing when he was hit, specifically that he was hit in an unmarked crosswalk when appellant failed to stop his car.  Officer Gering's opinion that appellant failed to stop for a pedestrian in an unmarked crosswalk added nothing to Officer Sewell's testimony.  Thus, even assuming that the trial court abused its discretion in admitting Officer Gering's testimony, there is no reasonable probability appellant would have received a more favorable outcome if the testimony had been excluded.

b.   Testimony involving a legal conclusion

Officer Sewell also testified, without objection, that the failure to yield to a pedestrian in an unmarked crosswalk would be a violation of the Vehicle Code.[4]  Opining as to what the law is constitutes a legal conclusion.  Opining that the defendant violated the law, as Officer Gering did, is a factual  conclusion. (See *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1599 ["Whether a fiduciary duty exists is generally a question of law.  [Citation.]  Whether the defendant breached that duty towards the plaintiff is a question of fact."].)  Officer Gering's testimony was premised on the belief that failing to stop for a pedestrian was a violation of section 21950, but his focus

---

[4]    The transcript shows that Sewell stated the conduct would violate section 21958, but this appears to be a misstatement, as the conduct described would be a violation of section 21950.

12

was on whether the conduct occurred, not whether such conduct, if it occurred, violated section 21950. (See *People v. Lowe* (2012) 211 Cal.App.4th 678, 685 [People's experts may use statutory language to frame their opinions].)

Even if we assume it was error to permit Officer Gering to opine that a specific Vehicle Code section was violated, there is no reasonable probability appellant would have received a more favorable outcome if the testimony had been excluded. As discussed above, the jury instruction given by the trial court did not refer to a specific Vehicle Code section. Since the instruction did not tell the jury it was required to determine whether appellant's conduct violated section 29150, Gering's opinion on whether such a violation occurred was superfluous.

### c. Evidence of the victim's behavior

Appellant's claim that Officer Gering's opinion was improper because he did not know whether Myoung acted recklessly by walking into traffic is premised on the belief that Myoung's recklessness would somehow be a defense to section 21950.

Subdivision (b) of section 21950 does provide: "This section does not relieve a pedestrian from the duty of using due care for his or her safety. No pedestrian may suddenly leave a curb or other place of safety and walk or run into the path of a vehicle that is so close as to constitute an immediate hazard."[5]

---

[5] We note that the wording of the subdivision "indicates the statute was intended to apply to those situations where a pedestrian unexpectedly asserts his right-of-way in an intersection at a time when the vehicle is so close that it is virtually impossible to avoid an accident. Typical situations include when a pedestrian steps, jumps, walks or runs directly in

13

Section 21950 does not end with subdivision (b), however. Subdivision (d) of section 21950 provides: "Subdivision (b) does not relieve a driver of a vehicle from the duty of exercising due care for the safety of any pedestrian within any marked crosswalk or within any unmarked crosswalk at an intersection."[6]

Section 21950 as a whole is thus consistent with the well-established rule that "a crime victim's contributory negligence is not a defense." (*People v. Marlin* (2004) 124 Cal.App.4th 559, 569 (*Marlin*).) Officer Gering did not need any knowledge of Myoung's exercise of due care before the crash to be able to properly opine that appellant violated section 21950, subdivision (a).

While a criminal defendant's conduct must be the legal and proximate cause of the victim's injuries, appellant did not and could not have argued a lack of causation in this case. Further, once such causation has been shown "the actions or failings of the victims or third parties are of no consequence." (*Marlin, supra,* 124 Cal.App.4th at p. 569.) Thus, even if concurrent causation is shown, the criminal defendant remains criminally responsible. (*Id.* at p. 570 [if defendant's conduct was a cause of injury or death to another person, " 'then it is no defense that the conduct

---

front of a vehicle travelling in lanes which are adjacent to the curb or other place of safety occupied by the pedestrian. Under such circumstances, the vehicle would most certainly constitute an immediate hazard to the pedestrian." (*Spann v. Ballesty* (1969) 276 Cal.App.2d 754, 761.) That was not the situation here.

[6] The court instructed the jury on the substance of section 21950, subdivisions (b) and (d) without using statutory references.

14

of some other person[, even the [injured][deceased] person,] contributed to the [injury or death]' ".)

The facts of *Marlin* are instructive. The victim in that case was allegedly speeding and inattentive and experienced "brake fade." The *Marlin* court explained that even if the victim had been driving negligently, "the accident would not have occurred but for defendant's losing control of his car due to his intoxication and thereafter driving into [the victim's] lane of traffic. Had he not done so, there would have been no collision. And, there can be no doubt those same actions were a substantial factor that contributed to the accident." (*Marlin*, *supra*, 124 Cal.App.4th at p. 570.) The situation here is substantially similar. Even if Myoung initially stepped from the safety of the curb into the number 2 lane without looking, he did not step directly in front of appellant. The accident in the number 1 lane would not have occurred but for appellant's impaired driving in that lane. Appellant's own testimony showed that he was focused on the left side of Pico Boulevard, toward the imaginary bicyclist, and not toward the number 2 lane to his right where Myoung first entered traffic lanes and was progressing across the street.

4. **Evidence of appellant's abilities**

Appellant contends Officer Gering did not testify to having any specific knowledge of how the accident occurred and so should have not been permitted to testify that appellant should "have been able to see Mr. Myoung crossing the street in the crosswalk"; and appellant should "have been able to slow down or yield to Mr. Myoung walking across the street."

Officer Gering testified he was a "collision investigator." He was trained for and had specialized in driving under the influence investigations. As his testimony showed, his

15

investigations to determine whether an individual was intoxicated considered the totality of the circumstances, including the circumstances of the collision.  Thus, he was qualified to opine on the above issues.  (See *Hart v. Wielt* (1970) 4 Cal.App.3d 224, 229 ["It is generally established that traffic officers whose duties include investigation of automobile accidents are qualified experts that may properly testify concerning their opinions as to the various factors involved in such accidents, based upon their own observations."].)

Officer Gering's own observations of the collision scene provided sufficient facts for him to opine that appellant should have been able to see and stop for Myoung.  Gering testified that the collision occurred in a "semi well-lit intersection or streets" and "you can look down a couple [of] blocks in either direction." He also testified that when he arrived at the scene he noticed that appellant's vehicle was "blocking the [number] 1 lane partially in [the number] 2 lane," but "mostly in the [number] 1 lane."  Thus, the facts known to Officer Gering showed that Myoung was in the number 2 lane in a crosswalk in a well-lit intersection before the collision, and that there was nothing to obstruct a driver's vision.  This is a more than sufficient factual basis for Officer Gering to opine that appellant should have been able to see Myoung, and, having seen him, should have been able to stop.  (See *Spann v. Ballesty*, *supra*, 276 Cal.App.2d at pp. 754, 761–762 [when pedestrian steps from place of safety directly in front of vehicle it is virtually impossible to avoid an accident, but not when pedestrian crosses lanes of traffic before stepping in front of vehicle].)

16

B.	*The Enhancement Term Based On A Prior Conviction Allegation Which Was Neither Admitted Nor Found True Must Be Stricken But May Be Tried By A Jury On Remand.*

Appellant and respondent agree the five-year enhancement term for his prior serious felony conviction (Pen Code, § 667, subd. (a)(1)) is an unauthorized sentence because appellant did not knowingly admit the conviction and neither the jury nor the trial court found the allegation true. We agree as well. Appellant and respondent disagree about whether the matter can be remanded and the allegation tried before a different jury. We agree with respondent that such a trial is permissible.

### 1.	Trial court proceedings

At some point before or during trial, appellant requested bifurcation of the allegation that he had suffered a prior strike conviction. During trial, the court explained to appellant that he had the right to have the same jurors who determined guilt on the charged offense determine the truth of the allegation. In the alternative appellant could agree to have the court try the allegation or he could admit the allegation.

During his trial testimony, appellant admitted that he had suffered a prior conviction for robbery. However, the trial court did not advise appellant, as required, of the full penal consequences of the admission. (*People v. Cross* (2015) 61 Cal.4th 164, 170–171.) Respondent concedes appellant did not knowingly admit the prior serious felony conviction.

After the jury convicted appellant, the trial court excused the jury without objection from either side. After the jurors had left the courtroom, the trial court asked the parties to "confer with one another for any pre-sentencing motions and sentencing, as well as the bifurcated portion of this case." Appellant's counsel

17

stated: "May 6, Your Honor?" The court approved the date, then told appellant: "You have the right to be sentenced and to have the second portion of these proceedings conducted within the statutory period. Your attorney is asking that you return May 6. Is that acceptable to you?" Appellant replied: "Yes."

The parties eventually appeared for sentencing on July 9, 2020. The prosecutor noted that part of the basis for her requested sentence was "the admission of the prior strike would be six years, the additional 667(a)(1) five year . . . ." Appellant's counsel asked the court to "consider striking the strike on an oral *Romero*.[7]" Although no court trial was held on the prior conviction allegations, later in the hearing the trial court granted the *Romero* motion but imposed an "additional five years . . . with respect to the 667(a)(1) prior." Appellant did not object.

2. **Forfeiture of right to same jury**

Penal Code section 1025, subdivision (b) provides that "if a defendant pleads not guilty to the underlying offense, and a jury decides the issue of guilt, that same jury shall decide whether the defendant 'suffered the prior conviction' unless the defendant waives jury trial." (*People v. Tindall* (2000) 24 Cal.4th 767, 772.) Penal Code section 1025, subdivision (b), is a procedural requirement. (*Tindall,* at p. 776.)

Where the information contains a prior conviction allegation, bifurcation of the allegation has been ordered, the jury returns a guilty verdict on the substantive charge and then is discharged without objection by the defendant, before the truth of the allegation has been determined, "further proceedings to determine the truth of the prior conviction allegations are not

---

[7]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497

18

prohibited either by statute or by the double jeopardy clauses of the federal and state Constitutions." (*People v. Saunders* (1993) 5 Cal.4th 580, 585 (*Saunders*).) Further a defendant forfeits his section 1025 right to have the allegation decided by the same jury that determined guilt when he fails "to object in a timely fashion when the jury was discharged. (*Saunders*, at p. 591.) Here appellant did not object and so he forfeited his right to have the prior conviction allegation decided by the same jury that decided his guilt.

Appellant contends the rule of *Saunders* should not apply in this case because this case is more similar to the procedural posture before the California Supreme Court in *People v. Hendricks* (1987) 43 Cal.3d 584 (*Hendricks*). Appellant claims that *Hendricks* "found a second trial following an incomplete verdict to be an unauthorized nullity." Appellant appears to believe the Court barred another trial by a different jury. He has misunderstood *Hendricks*.

In *Hendricks*, "the jury found defendant guilty as charged and found all the special circumstance allegations to be true. At the penalty phase, they fixed the penalty at death and were subsequently discharged. [¶] On the day set for sentencing, the parties reminded the court that a sanity hearing had not been conducted immediately after the guilt phase, as required by Penal Code section 190.1, subdivision (c). Over defendant's objection that the same jury must determine all the issues in a capital trial, the court empaneled a new jury to decide the issue of sanity alone. After deliberations that spanned 11 days the jurors reported they were hopelessly deadlocked, and a mistrial was declared." (*Hendricks*, *supra*, 43 Cal.3d at p. 589.) The trial judge then "committed the utterly incomprehensible act of

19

recalling the original jurors—more than five months after their discharge and return to the community—to consider the question of sanity.  This action was wholly beyond the jurisdiction of the court." (*Id*. at p. 588.)  The Supreme Court vacated the sanity verdict by the recalled jury.  (*Id*. at p. 599.)  As Division 7 of this District Court of Appeal explained, the California Supreme Court then "remanded the matter to the superior court." (*People v. Hendricks* (1992) 11 Cal.App.4th 126, 129.)  "The instant sanity retrial began in 1990.  On September 11, 1990, the jury found appellant sane at the time of the commission of all four offenses." (*Ibid*.)  Division 7 found no errors in the sanity trial and affirmed the judgment of conviction.  (*Id*. at p. 133.)  The Supreme Court denied appellant's petition for review.

### 3.    **Preservation of double jeopardy claim**

"For purposes of preserving this issue for another forum," appellant maintains that a post-remand trial on the prior conviction allegation would improperly place him twice in jeopardy in violation of both the federal and state constitutions. (U.S. Const. 5th Amend.; Cal. Const., art 1, § 15.)  As appellant recognizes, *People v. Monge* (1997) 16 Cal.4th 826, affd. *sub nom. Monge v. California* (1998) 524 U.S. 721 and *Almendarez-Torres v. United States* (1998) 523 U.S, 224 currently foreclose such a claim.

## DISPOSITION

The five-year enhancement term pursuant to Penal Code section 667, subdivision (a)(1) is ordered stricken. The matter is remanded to permit the prosecutor to decide whether to try the enhancement allegation. If the prosecutor does not elect a trial, the trial court shall resentence appellant without the enhancement. The judgment of conviction is affirmed in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, J.

We concur:



GRIMES, Acting, P. J.



WILEY, J.

21