Filed 4/27/23  Koganti v. PODS Enterprises CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| KARTEEK KOGANTI et al., | D080905 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. RIC1817775) |
| PODS ENTERPRISES, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, John W. Vineyard, Judge.  Reversed and remanded with directions.

Law Offices of Ted B. Wacker and Ted B. Wacker; The Arkin Law Firm and Sharon J. Arkin for Plaintiffs and Appellants.

Bishop Berry and Aaron Hancock; Cox Wootton Lerner Griffin & Hansen and Lynn Lucy Krieger; Greines, Martin, Stein & Richland, Edward L. Xanders and Jeffrey Gurrola, for Defendant and Appellant.

Plaintiffs and appellants Karteek Koganti, Siv Atej Meka, Ramakrishna Gopu, Phani-Raj Ponna, Venkatrikan Juttiga and Gowtham Meka appeal a summary judgment entered in favor of defendant and respondent PODS Enterprises, LLC (PODS) on plaintiffs' complaint for

personal injuries arising out of an automobile accident involving a semi-truck carrying containers owned by PODS. Plaintiffs sued PODS, the driver and others alleging causes of action for negligence, vicarious liability, and violations of certain federal laws, in part alleging PODS unlawfully brokered the transportation and permitted interstate brokerage services without complying with financial security requirements. PODS successfully moved for summary judgment; the court ruled PODS met its burden to show it was acting as a shipper and not a motor carrier, precluding liability under any of the plaintiffs' causes of action.

On appeal, plaintiffs contend (1) the evidence raises triable issues of fact as to PODS's status as a motor carrier; (2) disputed issues of fact exist as to whether PODS acted as a principal in retaining agents to act as a broker to locate a driver, and thus is liable under agency principles; and (3) even if the broker and driver were independent contractors, PODS as the hirer of a common carrier is liable under the regulated hirer exception to the rule of nonliability for an independent contractor's negligence. Plaintiffs challenge the trial court's order excluding evidence of testimony recounting content contained on PODS's website and certain portions of plaintiffs' opposing expert's declaration.

We reverse the summary judgment. The trial court improperly sustained PODS's objections to plaintiffs' evidence, including to portions of their expert declaration, and PODS did not specifically object to the expert's conclusion that PODS undertook to act as a motor carrier in the transaction at issue or his opinion that PODS "is liable for all injuries arising out of the incident as if it was the motor carrier transporting the goods at the time of the incident." We hold the evidence raises a disputed fact issue for the jury

2

as to PODS's status as a motor carrier, and therefore its liability for the negligence of the entities involving in transporting the load.

FACTUAL AND PROCEDURAL BACKGROUND

We state the undisputed facts and other facts in the light most favorable to plaintiffs as the losing parties, resolving evidentiary doubts and ambiguities in their favor. (See *Gund v. County of Trinity* (2020) 10 Cal.5th 503, 507, fn. 2.)[1]

In January 2018, plaintiffs were involved in a motor vehicle accident in Pennsylvania caused by Vasili Ursati while Ursati was operating a tractor trailer. Ursati was driving in the course and scope of his work for IBY Transportation, Inc. (IBY), a motor carrier. Ursati's cargo was containers owned by PODS containing goods of PODS's customers. PODS hired Total

---

[1] We note that for many of the facts that plaintiffs purport to dispute, their responsive separate statement of material undisputed facts does not provide pinpoint citations to the assertedly supporting evidence, violating California Rules of Court, rule 3.1350. The Rule of Court provides in part: ". . . [D]irectly opposite the recitation of the moving party's statement of material facts and supporting evidence, the response must unequivocally state whether that fact is 'disputed' or 'undisputed.' An opposing party who contends that a fact is disputed must state, on the right side of the page directly opposite the fact in dispute, the nature of the dispute and describe the evidence that supports the position that the fact is controverted. Citation to the evidence in support of the position that a fact is controverted must include reference to the exhibit, title, page, and line numbers. (Cal. Rules of Court, rule 3.1350(f)(2).) Here, for many of PODS's facts (Nos. 5, 13-16, 18-20) plaintiffs make an assertion purporting to dispute the fact, then state: "This is outlined in plaintiffs' opposition, and encompasses [plaintiffs' statement of undisputed fact] Nos. 1-40 below" or "See [plaintiffs' statement of undisputed fact] Nos. 1-40 below and plaintiff[s'] opposition." (Some capitalization omitted.) The deficiency makes it difficult to ascertain the exact evidence on which plaintiffs rely to dispute the referenced facts. It does not appear the trial court's grant of summary judgment was based on the deficiencies, however. (Compare, *Rush v. White Corp.* (2017) 13 Cal.App.5th 1086, 1096-1097, 1100-1101.)

3

Quality Logistics, LLC (TQL) to arrange the transportation of its customers' goods and TQL placed the cargo with IBY. PODS considers itself a moving company and it maintains a motor carrier license with the Department of Transportation.

After the accident, plaintiffs sued Ursati, IBY, PODS, VI Solution Group, Inc. and VI Solution Group, LLC. Their operative first amended complaint alleges causes of action for negligence, vicarious liability, and violations of certain federal laws.[2] They allege PODS's negligence in "hiring, supervising, entrusting, contracting, and/or retaining [TQL] as an agent was a substantial factor in causing harm to" them, as was PODS's negligence in entrusting and allowing Ursati to drive the vehicle. Plaintiffs allege PODS and the other defendants "directly and/or indirectly" employed and retained Ursati, and were vicariously liable for their "employee/agent" Ursati's tortious conduct. Plaintiffs allege as to PODS and TQL that PODS was a licensed motor carrier, PODS accepted goods from its customers pursuant to its authority as a motor carrier, and PODS "unlawfully brokered the load containing [its customers'] goods to [TQL] to transport," which violated federal law. Plaintiffs also allege PODS violated federal law by failing to comply with registration and financial security requirements for permitting interstate brokerage services as a broker.

PODS moved for summary judgment or alternatively summary adjudication of issues. Though it conceded it was a "storage and moving company," it argued it acted exclusively as the cargo's shipper, using third

---

2  Specifically, plaintiffs rely on a provision of the Motor Carrier Act of 1980, title 49 United States Code section 13901 (Pub.L. No. 96-296 (July 1, 1980) 94 Stat. 793) and title 49 United States Code section 14916. "Congress deregulated trucking with the adoption of the Motor Carrier Act of 1980." (*People v. Superior Court of Los Angeles County* (2020) 57 Cal.App.5th 619, 628.)

4

party carriers to transport its customers' goods, and thus it assumed no responsibility for injuries to third parties during transit. PODS presented evidence that typically a PODS customer will order a container, which is dropped off, unloaded at the customer's residence or office, packed by the customer, then picked up loaded and returned by PODS to a PODS storage center. It presented evidence that while it maintained a motor carrier registration with the United States Department of Transportation and used trucks and drivers for local pickups and drop offs, it viewed deliveries between storage centers as "entirely distinct." According to PODS, when a customer asks that a container be moved across country, PODS arranges for the container's shipment from one PODS storage center to another storage center near the new location, and thus it did not act as a motor carrier for those shipments. It presented evidence that this arrangement was reflected in PODS's rental agreement and privacy policy.

With respect to the specific case, PODS presented evidence it had worked with TQL, a freight broker that hired and placed the shipment with IBY as the carrier, and TQL arranged for transportation between PODS storage centers. PODS asserted it played no role in IBY's selection and was not privy to the communications between TQL and IBY; it did not act as a motor carrier or a freight broker with respect to the shipment involved in the accident. According to PODS, it "had no input into or control over TQL's retention of IBY and IBY's selection of Mr. Ursati to deliver the load. It neither employed Mr. Ursati nor directed his operations."

PODS argued plaintiffs could provide no evidence in support of their cause of action for negligence under a theory of negligent entrustment, for which they had to demonstrate PODS knew or should have known its entrustee was " 'incompetent or reckless.' " It argued its retention of a freight

5

broker was not an illegal or per se negligent act. PODS presented evidence that TQL maintained its certification as a freight broker by the Federal Motor Carrier Safety Administration since onboarding with PODS in 2011, and its insurance had never lapsed during that time.

As for the claim of vicarious liability, PODS argued it did not employ or direct the operations of Ursati, who worked for and was supervised by IBY. PODS acknowledged it was registered as a motor carrier at the time of the accident, and that under *Serna v. Pettey Leach Trucking, Inc.* (2003) 110 Cal.App.4th 1475, 1477, a motor carrier "remains vicarious[ly] liabl[e] for the negligence of all drivers or sub-carriers in the chain of privity under it." PODS argued its registration was "irrelevant because it was not functioning as a motor carrier when the accident occurred." According to PODS, its motor carrier registration was used only for trips between customers' residences and PODS storage centers, which were considered local deliveries, but the accident involved an interstate delivery between storage centers in New York and North Carolina, which PODS did not perform. PODS stated all involved parties understood it did not act as a motor carrier for shipments between storage centers, but only acted exclusively as a shipper using third party carriers. PODS pointed out neither its rental agreement nor privacy policy described PODS as transporting the cargo between storage centers, only its role as arranging or coordinating shipment and transportation by third parties. Finally, PODS argued even if some communication or agreement created a triable issue as to whether it obligated itself to customers to transport containers with its own resources, it would be irrelevant to the sufficiency of the vicarious liability cause of action, as

6

nothing in any agreement suggested it was intended to benefit third party bodily injury claimants.[3]

In opposition, plaintiffs first argued PODS did not shift the summary judgment burden of proof to them because PODS failed to provide any analysis as to what constitutes a shipper under the Federal Motor Carrier Act.[4] They further argued even if PODS sufficiently shifted the burden to them, the evidence raised triable issues of fact as to PODS's role with respect to the cargo load at issue. According to plaintiffs, PODS could not be the "individual shipper" or a "commercial shipper" within the meaning of federal law in part because it did not own the goods being transported, nor did it assume the responsibility to pay the tariff or transportation charges for the containers.

Plaintiffs argued there was a triable issue of material fact as to whether PODS acted as a motor carrier in that PODS voluntarily undertook to be "responsible for the transportation of its customers' goods from destination to destination" and made statements to that effect on its

---

[3]  PODS further argued that there was no evidence it acted as a broker as defined by federal law; rather the evidence was it used TQL to select, retain and place the load with IBY, the motor carrier. For the same reason, PODS argued it could not have violated 49 United States Code section 14916, which "pertains to brokers only and creates a cause of action against entities which are in breach of obligations at subdivision (a) to maintain licensure and insurance." PODS maintained that even if the evidence showed it violated those statutes, the violations would not support a cause of action for damages because plaintiffs could not show they were entitled to the protections of the statutes, and plaintiffs could not show either statute provided a remedy for bodily injury in the first instance. As PODS points out, plaintiffs on appeal do not challenge the summary judgment on their cause of action alleging these federal statutory violations.

[4]  On appeal, plaintiffs do not repeat their arguments that PODS failed to meet its threshold summary judgment burden.

7

website.[5]  They argued PODS did not shift the burden to them on the issue of its vicarious liability, as PODS merely argued it was acting as a shipper without analyzing whether it met the definition of a shipper.  They argued PODS voluntarily undertook an obligation to be a motor carrier, and under California law retained vicarious liability for the negligence of all drivers or sub-carriers in the chain of privity under it.  Plaintiffs argued they presented expert evidence raising triable issues as to PODS's negligence, precluding summary adjudication.  They further argued agency law compelled the conclusion that PODS was negligent for the acts of IBY and Ursati, stating, "[T]here is evidence that PODS is controlling what the sub-carriers do, where they go, how they get there, how and when to notify the facility that they are on their way, how to secure the PODS to the truck, and how to communicate with PODS about progress and issues that occur during transportation.  This is control over the way the hired entity does its job."  According to plaintiffs, PODS hiring TQL to find a carrier did not absolve PODS of liability or "break the chain of agency . . . ."

In reply, PODS asserted evidentiary objections to some of plaintiffs' evidence, namely references to content from pages from PODS's website by a deponent, Joe Guerrini, and plaintiffs' expert, Lew Grill, as well as what PODS characterized as Grill's conclusions of law about statutory violations.

---

[5]     Plaintiffs argued:  "PODS considers itself a moving company and provides moving and storage services featuring portable storage containers to the public in exchange for fees paid by its customers.  The PODS website says that PODS 'does all of the driving,' and that it will 'take care of driving your PODS container to your new home.'  . . .  Customers rent containers from PODS in which they place their personal goods, and then they pay PODS to transport those containers.  The customer only calls PODS for this transportation service and deals only with PODS."

Sustaining all of PODS's evidentiary objections, the court granted the motion and entered summary judgment. It ruled PODS met its burden of proof to show it was acting as the shipper for the load in question. The court found: "Customers pay PODS to ship PODS containers containing customers' items. . . . Here, PODS tendered its containers to motor carrier IBY . . . at its storage facility. . . . PODS customers are solely responsible for any and all applicable governmental, border and custom charges, fees, tariffs, taxes or any other fees or expenses[ ] related to the transportation of the PODS across the US-Canada border; however pursuant to PODS'[s] form rental agreement, customers are advised that PODS may pay tariffs and in turn the customer authorized PODS to charge customers' credit card for reimbursement."[6]

The court rejected plaintiffs' argument that there were triable issues of material fact as to whether PODS was acting as a motor carrier with respect to the accident: "It is undisputed that PODS is a licensed motor carrier, that PODS transports customer[s'] property utilizing its own trucks and drivers for local deliveries, and that customers pay PODS to ship PODS containers containing customers' items. However, in this situation, the customers requested that their goods be moved across country. In those situations,

---

[6]     In making its ruling, the court pointed to the federal regulations definitions of a shipper and "commercial shipper." (49 C.F.R. §§ 390.5, 375.103 (2022).) 49 Code of Federal Regulations part 390.5 (2022) defines a "shipper" in part as "a person who tenders property to a motor carrier or driver of a commercial motor vehicle for transportation in interstate commerce . . . ." 49 Code of Federal Regulations part 375.103 (2022) defines a "commercial shipper" as "a person who is named as the consignor or consignee in a bill of lading contract who is not the owner of the goods being transported but who assumes the responsibility for payment of the transportation and other tariff charges for the account of the beneficial owner of goods."

PODS arranges for shipment of the container through a broker (here TQL) who in turn contracts with a motor carrier (here IBY)." It rejected plaintiffs' attempt to create a factual dispute over whether PODS acted as a motor carrier under agency principles and under the federal statutes. Pointing out that customer bills included fees for transportation mileage, rental fees, and insurance for the goods inside the pods, it found only IBY was actually "providing" the transportation for compensation under the definition of 49 United States Code section 13102. The court ruled: "PODS['s] role was simply arranging for the transportation, for compensation, but not actually 'providing' the transportation. Further, the purpose of the Federal Motor Carrier Safety Act is to regulate and impose certain responsibilities on those operating vehicles to ensure they maintain and operate their vehicles in a safe manner and to assure that motor carriers maintain an appropriate level of financial responsibility for motor vehicles operated on public highways. [Citation.] Here, PODS was not operating the vehicle, nor responsible for those operating the vehicle. Further, [p]laintiff[s] did not provide any facts that would support an agency relationship between PODS and IBY. Accordingly, [p]laintiffs have not identified any disputed facts upon which it could be determined that PODS was acting as the motor carrier for the load." The court ruled that because the undisputed facts reflected that PODS was not the motor carrier, there were no disputed facts as to whether PODS owed plaintiffs a duty of care or was vicariously liable, and neither statutory provision on which plaintiffs relied applied.

Plaintiffs filed this appeal from the judgment.

DISCUSSION

I. *Summary Judgment Legal Principles and Standard of Review*

Summary judgment is proper only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Flores v. City of San Diego* (2022) 83 Cal.App.5th 360, 371.)  A defendant moving for summary judgment has the burden of producing evidence to show a cause of action lacks merit because the plaintiff either cannot establish an element of the cause of action or there is a complete defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; see *Regents*, at p. 618; *Flores*, at p. 371.)  If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact with respect to that cause of action or defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Flores*, at p. 371.)

We review the entire record and the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Andrews v. Metropolitan Transit System* (2022) 74 Cal.App.5th 597, 603.)  We examine the facts presented to the trial court and determine their effect as a matter of law. (*Regents of University of California v. Superior Court*, *supra*, 4 Cal.5th at p. 618; *Andrews*, at p. 603.)  " ' " 'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " ' " (*Hampton,* at p. 347; accord, *Regents*, at p. 618; *Andrews*, at pp. 603-604.)  "[A]ny doubts as to the propriety of

11

granting a summary judgment motion should be resolved in favor of the party opposing the motion." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.)

## II. *Challenge to Evidentiary Rulings*

We begin with plaintiffs' challenge to the court's evidentiary rulings because, as stated above, on review of a summary judgment, we normally disregard all properly excluded evidence. (Code Civ. Proc., § 437c, subd. (c); *Hampton v. County of San Diego, supra*, 62 Cal.4th at p. 347; *Reid v. Google, supra*, 50 Cal.4th at pp. 534-535; accord, *Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 225 [addressing evidentiary ruling first where "critical" to the summary judgment rulings].) As more fully described below, plaintiffs contend the court misapplied the relevant law and thereby abused its discretion in sustaining PODS's evidentiary objections to declaration testimony concerning PODS's website as well as to certain averments made by their expert Grill.

## A. *Additional Legal Principles and Standard of Review*

In keeping with the general review standards set forth above, we strictly construe the declarations in support of a motion for summary judgment while liberally construing the opposing declarations. (*Alexander v. Scripps Memorial Hospital La Jolla, supra*, 23 Cal.App.5th at p. 225; see also *Mackey v. Board of Trustees of California State University* (2019) 31 Cal.App.5th 640, 657 ["evidentiary questions at summary judgment ' "are subject to the overarching principle that the proponent's submissions are scrutinized strictly, while the opponent's are viewed liberally" ' "].) " 'This does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration. Only *admissible evidence* is liberally construed in deciding whether there is a triable issue.' " (*Alexander*, at p. 225; see *Taylor v. Financial Casualty & Surety, Inc.* (2021) 67

Cal.App.5th 966, 979 [a party may not raise a triable issue of fact by relying on evidence that will not be admissible at trial].)

The standard of review for assessing the court's evidentiary rulings in the summary judgment context is not settled. (See *Reid v. Google, Inc.*, *supra*, 50 Cal.4th at p. 535 ["[W]e need not decide generally whether a trial court's ruling on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo"].) Both plaintiffs and PODS argue our review of those rulings is for abuse of discretion; we acknowledge the weight of authority applies that standard. (*Mackey v. Board of Trustees of California State University*, *supra*, 31 Cal.App.5th at p. 657; see also *Doe v. SoftwareONE, Inc.* (2022) 85 Cal.App.5th 98, 103; *Alexander v. Scripps Memorial Hospital La Jolla*, *supra*, 23 Cal.App.5th at p. 226.) Under it, the challenging party must establish the court exceeded the bounds of reason, all of the circumstances being considered. (*Alexander*, at p. 226; *Mackey*, at p. 657.)

However, here, as to the evidence concerning PODS's website, the court's "rulings were determined on the papers and were based on questions of law such as hearsay . . . ." (*Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451.) In that instance, de novo review is appropriate. (*Ibid.*; *Alexander v. Scripps Memorial Hospital La Jolla*, *supra*, 23 Cal.App.5th at p. 226 [but holding the standard of review varies depending on the type of evidentiary objection].)

As for the ruling excluding portions of plaintiffs' expert's declaration, "in the context of pretrial proceedings, the trial court's ruling . . . is reviewed for abuse of discretion '[e]xcept to the extent the trial court bases its ruling on a conclusion of law.' " (*Pipitone v. Williams*, *supra*, 244 Cal.App.4th at p. 1451, fn. 11, citing *Sargon Enterprises, Inc. v. University of Southern Cal.*

13

(2012) 55 Cal.4th 747, 773.) A court "must . . . be cautious in excluding expert testimony." (*Sargon*, at p. 772.) In assessing expert testimony, "[t]he trial court acts as a gatekeeper whose role is to 'exclude "clearly invalid and unreliable" expert opinion.' " (*Alexander v. Scripps Memorial Hospital La Jolla*, *supra*, 23 Cal.App.5th at p. 225; see *Sargon*, at p. 772.) " '[T]he gatekeeper's focus "must be solely on principles and methodology, not on the conclusions that they generate." ' " (*Alexander*, at p. 225.) Further, " '[t]he scope of [a trial court's] discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." ' " (*Sargon*, at p. 773.) Thus, " '[t]o determine if a court abused its discretion, we must consider "the legal principles and policies that should have guided the court's actions." ' " (*Strobel v. Johnson & Johnson* (2021) 70 Cal.App.5th 796, 816, quoting *Sargon*, at p. 773.) " '[T]he court's discretion' to exclude expert testimony in particular 'is not unlimited' where it implicates a party's ability to present its case. [Citation.] 'Rather, it must be exercised within the confines of the applicable legal principles.' " (*Strobel,* at p. 816.)

Here, as with the evidence pertaining to PODS's website, the nature of PODS's objection—that Grill improperly testified to issues of law in violation of *Summers v A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1179 (*Summers*)— suggests de novo review is appropriate. (Accord, *Strobel v. Johnson & Johnson, supra,* 70 Cal.App.5th at pp. 816-817 [applying de novo review to summary judgment evidentiary ruling sustaining objection on case law relating to intersection of hearsay and expert testimony]; *Alexander v. Scripps Memorial Hospital La Jolla*, *supra*, 23 Cal.App.5th at p. 226 [de novo review is proper where evidentiary objections raise questions of law]; but see *Mackey v. Board of Trustees of California State University, supra,* 31

14

Cal.App.5th at pp. 657-658 [applying abuse of discretion standard in deciding whether court properly excluded evidence under *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1].) We need not decide the issue, as we conclude under either standard—reviewing the question either independently or for abuse of discretion—the court erred by sustaining PODS's objections to the portions of Grill's declaration discussed below. (Accord, *Harris v. Thomas Dee Engineering Co., Inc.* (2021) 68 Cal.App.5th 594, 604, fn. 8.)

B. *Evidence Regarding PODS's Website*

   1. *Background*

In opposing summary judgment, plaintiffs presented deposition testimony of PODS's in-house counsel, Joe Guerrini. During his deposition, Guerrini responded to questions about exhibits that plaintiffs' counsel represented were printed pages from PODS's website. Specifically, counsel read from the exhibits and elicited Guerrini's comment:

[Plaintiffs' counsel:] "Then it says under the section: . . . [']We'll take care of driving your PODS container to your new home whether you're moving across town or across the country,['] correct?

[Guerrini:] Correct.

[Plaintiffs' counsel:] So PODS advises its customers they will take care of the driving of the PODS containers, correct?

[Guerrini:] I can only read back what it says: [']We'll take care of driving your PODS container to your new home, whether you're moving across town or across the country.['] "

In an opposing summary judgment declaration, plaintiffs' expert Grill averred he had reviewed PODS's website, and stated: "The website contains PODS'[s] advertising and marketing materials. PODS['s] website informs customers that PODS did all the driving. PODS advised customers that

15

PODS would use great care at all steps of the long-distance moving process. There were images of trucks with PODS['s] logo/name depicted on the truck. There is no mention anywhere on PODS website or marketing materials that would alert a customer that someone other than PODS is moving customer[s'] goods."

PODS objected to the website references during Guerrini's deposition and in expert Grill's declaration on grounds of inadmissible hearsay (Evid. Code, § 1200) and lack of foundation for admission as either a business or public record under the hearsay exceptions for such records (Evid. Code, §§ 1270 et seq., 1280 et seq.).  As for the website references made by Grill, PODS also cited *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*) for the proposition that an expert's recitation of case-specific, out-of-court statements as true and accurate in support of the expert's opinion renders the statements hearsay.  The court sustained the objections without explanation.

2. *Contentions*

Plaintiffs contend the court erred by these evidentiary rulings.  It maintains that because PODS is a party, its statements made on its website are admissible under the party exception to the hearsay rule and PODS did

not rebut a presumption of authenticity set forth in Evidence Code section 1552.[7]

PODS responds first that Guerrini's deposition testimony about the contents of the website is inadmissible because it violates the rule that "oral testimony is not admissible to prove the content of a writing." (Evid. Code, § 1523, subd. (a).) It argues Grill's testimony is inadmissible for the same reason and also because it is case-specific hearsay under *Sanchez*, *supra*, 63

---

[7] In connection with these arguments, plaintiffs request that we take judicial notice of various pages from PODS's website, which they assert contain PODS's admissions that are in conflict with its factual and legal assertions made below. They specifically argue the pages are properly judicially noticed as " '[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably disputable accuracy' " (Evid. Code, § 452, subd. (h)) and that the "website and its contents" are judicially noticeable "because they relate directly to the issues to be decided in this appeal." PODS points out in part that plaintiffs did not present the website pages to the trial court. We deny the request. We do not take judicial notice of documents that were not presented to the trial court when it decided the summary judgment motion. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 687, fn. 10.) Nor may we judicially notice the truth of the website's factual content. (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9 [while the existence of a document may be judicially noticed, its "truthfulness and proper interpretation . . . are disputable"]; *LG Chem, Ltd. v. Superior Court of San Diego County* (2022) 80 Cal.App.5th 348, 362, fn. 7 [declining to take judicial notice of truth of website contents for jurisdictional significance]; *Searles Valley Minerals Operations, Inc. v. State Bd. of Equalization* (2008) 160 Cal.App.4th 514, 519.) *Scott v. JPMorgan Chase Bank* (2013) 214 Cal.App.4th 743, on which plaintiffs rely, permitted judicial notice to be taken of the "undisputed legal effect of a legally operative document" such as "a recorded assignment or contract." (*Id.* at pp. 756,758, fn. 6.) *Scott* is inapposite to plaintiffs' request involving statements made on a business website. Plaintiffs' argument about the presumption of authenticity is curious, as PODS did not object below that the website pages were not authenticated.

17

Cal.4th 665. PODS further argues the website evidence is irrelevant as lacking any connection between it and the parties or customers; it maintains there is no evidence anyone relied on the website or that the website statements involved the specific transaction or the parties' expectations. PODS finally contends that even if the court erred in excluding the evidence, plaintiffs cannot show a reasonable probability it would lead to a more favorable result, as there is ample other evidence demonstrating PODS was neither a motor carrier nor IBY's principal with respect to the shipment.

3. *PODS Forfeited Evidentiary Challenges on Grounds of Secondary Evidence, Relevance, and Case-Specific Hearsay*

We do not consider PODS's arguments concerning the secondary evidence rule (see Evid. Code, §§ 1521, 1523)[8] or relevance of the testimony relating to the website statements. While it filed evidentiary objections, the record does not reflect PODS raised these specific objections in the trial court, and therefore PODS forfeited its arguments on those issues. (Code Civ. Proc., § 437c, subd. (b)(5) ["Evidentiary objections not made at the hearing [on the summary judgment motion] shall be deemed waived"]; see also *Reid v. Google, Inc.*, *supra*, 50 Cal.4th at p. 525 [to preserve evidentiary issues on appeal, litigants must object in writing before the summary judgment hearing or orally at the hearing]; *Joshi v. Fitness International, LLC* (2022)

---

8    Evidence Code section 1521 sets out the rule that makes secondary evidence generally admissible to prove the content of a writing. (Evid. Code, § 1521, subd. (a); see also Cal. Law Revision Com. com., 29 B pt. 5 West's Ann. Evid. Code (2015 ed.) foll. § 1521, p. 279.) Evidence Code section 1523, on which PODS seeks to rely for the first time on appeal, provides in part that, "[e]xcept as otherwise provided by statute, oral testimony is not admissible to prove the content of a writing." (Evid. Code, § 1523, subd. (a).)

80 Cal.App.5th 814, 830 [party waived particular objections to summary judgment evidence not raised below].)

Nor do we consider PODS's claim that expert Grill related case-specific hearsay about the website in violation of *Sanchez*, *supra*, 63 Cal.4th 665. The entirety of PODS's argument on appeal is: "[B]ecause [Guerrini's] deposition testimony regarding the website was not itself admissible, excluding Grill's recitation of that testimony was proper on the same basis and as inadmissible case-specific hearsay under [*Sanchez*, *supra*, at p. 686].)" PODS's bare reference to *Sanchez* without meaningful or developed legal analysis is inadequate. (See *Stuard v. Stuard* (2016) 244 Cal.App.4th 768, 780 [issue is forfeited in absence of meaningful legal analysis]; *Meridian Financial Services, Inc. v. Phan*, *supra*, 67 Cal.App.5th at p. 684 [reviewing court on summary judgment is not required to develop the parties' arguments].) Absent any attempt to " ' "disclose the reasoning by which [it] reached the conclusions [it] wants us to adopt" ' " (*Meridian*, at p. 699, quoting *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020)

57 Cal.App.5th 480, 498) we deem the assertion forfeited.[9]  In any event, we reject below the premise that Guerrini's testimony about the website is inadmissible hearsay.

### 4.  *Guerrini's Deposition Testimony Relates PODS's Admission*

As set forth above, at his deposition, Guerrini, who is assertedly PODS's corporate counsel, merely reiterated statements that were contained on what counsel represented—and Guerrini did not dispute—were pages from PODS's website.  During Guerrini's testimony, PODS did not object on grounds the website pages were unauthenticated or that they lacked foundation as a business record.  Nor does PODS meaningfully challenge on appeal the authenticity of the documents presented to Guerrini at his deposition or make any argument concerning their foundation, which was one of the bases for its objections below.  While it advances a bare assertion that plaintiffs never attempted to authenticate the website or offer it into

---

[9]     Under *Sanchez*, "an expert may not relate inadmissible '*case-specific facts about which the expert has no independent knowledge.*' " (*People v. Veamatahau* (2020) 9 Cal.5th 16, 26, quoting *Sanchez, supra,* 63 Cal.4th at p. 676.)  " 'Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried.' [Citation.] Testimony relating such facts, unlike testimony about non-case-specific background information, is subject to exclusion on hearsay grounds." (*Veamatahau*, at p. 26.)  When expert testimony rests on hearsay, however, "[l]ike any other hearsay evidence, it must be properly admitted through an applicable hearsay exception." (*Sanchez*, at p. 684; see also *Veamatahau*, at p. 26.)  Thus, an expert's testimony relating case-specific hearsay is not per se inadmissible; it may be admitted into evidence if, as here, the hearsay matter falls within a recognized exception. (Accord, *Conservatorship of S.A.* (2018) 25 Cal.App.5th 438, 448 [case-specific hearsay related by expert did not violate *Sanchez* where the hearsay qualified for admission under business records exception to hearsay rule]; *People v. Roa* (2017) 11 Cal.App.5th 428, 450 ["The limitation on expert testimony imposed by the Supreme Court in *Sanchez* applies to case-specific facts that are not independently proven *or covered by a hearsay exception*," italics added].)

20

evidence, PODS makes only the forfeited secondary evidence arguments and the argument that Grill's testimony as to the website is inadmissible case-specific hearsay.  In short, plaintiffs' evidence permits an inference that the documents presented to Guerrini were pages from PODS's own website, and PODS does not challenge that inference.

Courts have typically considered information contained on an Internet website inadmissible hearsay.  (See *People v. Stamps* (2016) 3 Cal.App.5th 988, 996-997, disapproved on other grounds by *People v. Veamatahau, supra,* 9 Cal.5th 16, 30, fn. 4.)  But here, statements by PODS on its own website fall within the well-recognized hearsay exception for party admissions.  (Evid. Code, § 1220.)  Because Guerrini did not relate inadmissible hearsay, the trial court erred by sustaining PODS's hearsay objection to Guerrini's deposition statements about PODS's webpage.

C.  *Declaration of Plaintiffs' Expert Grill*

1.  *Background*

In his opposing summary judgment declaration, Grill, who has worked in the trucking industry in various capacities since 1968, summarized his extensive experience and qualifications.  He averred in paragraph Nos. 28, 29 and 30: "Moving companies that offer interstate transportation services are required to register with the [Federal Motor Carrier Safety Administration].  Specifically, moving companies that obligate themselves to the transportation of the load are required to have motor carrier operating authority.  Moving companies that obligate themselves to arrange for transportation of the load are required to have brokering authority.  [¶]  . . . As evidenced by the order confirmations, attached as Exhibit E to PODS['s] motion for summary judgment, PODS made agreements with their customers for transportation of the customers' goods.  The order confirmations identified the shippers

21

(referred therein as customers) and specified the location for pick up and drop off. The order confirmations included charges to the shippers for transportation mileage. The order confirmations also included charges to the shippers for content protection while the goods were in transit. [¶] . . . Shipper is defined as 'any person who (1) is the shipper, consignor, or consignee of a household goods shipment; (2) is identified as the shipper, consignor or consignee on the face of the bill of lading; (3) owns the goods being transported; and (4) pays his or her own tariff transportation charges.' (49 [C.F.R.] § 375.103 [(2022)].) The goods being transported were owned by the customers. The individuals paying for transportation were the customers. The order confirmation contains the customer's contact information and is prepared on PODS stationary. In view of PODS['s] advertising to customers and representations made by PODS employees, it is clear that PODS (a moving company) accepted these loads under its authority as a motor carrier."

Grill concluded in paragraph No. 31: "Based on my review of the above referenced materials, as well as my education, training and experience, it is my opinion that PODS has undertaken the obligation to act as a motor carrier in connection with the transportation of goods for these customers. Specifically, PODS was paid by the shippers (referred to as customers in the order confirmation) for transportation of their goods from one state to another state. PODS was also paid by the shippers to insure their goods during this transportation. PODS was required by the Motor Carrier Act to advise the shippers if it intended on acting in some capacity other than a motor carrier. When an entity is undertakes [*sic*] the obligation to act as a motor carrier, the entity is responsible for transportation of the load. The entity is further responsible for any injuries that result in connection with

22

the transportation of the load. Therefore, PODS is liable for all injuries arising out of the incident as if it was the motor carrier transporting the goods at the time of the incident."

Citing *Summers, supra,* 69 Cal.App.4th at page 1179, PODS objected to paragraph Nos. 28, 29 and 30 on grounds Grill was "incompetent to testify as to statutory and regulatory violations, which are issues of law for the court." As stated above, the court sustained the objection. PODS did not, however, object to the paragraph containing Grill's conclusions or opinion about liability.

2. *Contentions*

Plaintiffs contend the court erred by its ruling. They argue Grill merely summarized the law applicable to the specialized area of trucking licensure and the factual circumstances on which he relied as a basis for his opinion on whether PODS was acting as a shipper or motor carrier in the specific transaction at issue. They maintain that given Grill's expertise, his statements were not without foundation nor did they render a legal opinion.

PODS responds that Grill's conclusions that PODS owed certain duties as a motor carrier and thus is "liable for all injuries" does not assist the trier of fact as it applies the law to the particular facts and thus usurps the trial court's role. It argues Grill's liability opinion, as well as his assertions of what PODS was "obligated" to do, run afoul of the rule that an expert opinion may not invade the province of the jury to decide a case. PODS further contends the court properly excluded Grill's opinion because it was based on the wrong regulation and thus he "impermissibly relied on matter that is *not* 'of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates.' " Finally,

acknowledging it did not object below to Grill's opinion in paragraph No. 31, PODS argues its failure to do so is "irrelevant" because the opinion is a " 'factually unsupported legal opinion' " and it is "*not* substantial evidence" creating a triable issue of fact.[10]

3. *PODS Forfeited Objections to Grill's Opinion on Liability for the Injuries Arising out of the Incident and Foundation for Grill's Opinions*

Basic summary judgment principles require us to consider Grill's opinions in paragraph No. 31 of his declaration that "PODS has undertaken the obligation to act as a motor carrier in connection with the transportation of goods for these customers" and his resulting statements about PODS's responsibility and liability for "all injuries arising out of the incident . . . ."

_____

[10] PODS's substantial evidence argument is unavailing. Admissibility and substantiality are distinct concepts, substantiality being a rule of appellate review. (See *Apple, Inc. v. Superior Court* (2018) 19 Cal.App.5th 1101, 1124.) The cases on which PODS relies, *Wise v. DLA Piper LLP* (*US*) (2013) 220 Cal.App.4th 1180, 1191 [jury trial] and *Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1126 [bench trial], involved trials on the merits and appellate court assessments of the adequacy of expert opinion. (*Wise*, at pp. 1193-1195; *Pacific Gas & Electric Co.*, at pp. 1128-1137.) PODS also cites *Precision Framing Systems, Inc. v. Luzuriaga* (2019) 39 Cal.App.5th 457 for the proposition that "even in the absence of an objection," a factually unsupported legal opinion is not " 'substantial evidence' to create a dispute of material fact" to avoid summary judgment. (*Id.* at p. 469.) Even if we agreed with *Precision Framing*'s statement, it was addressing the "factually unsupported legal opinion of *two lay witnesses*." (*Ibid.*, italics added.) *Wise*, cited by *Precision Framing*, does not support such a proposition. *Precision Framing* also cited *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096. But *Lockheed* involved a motion for class certification, in which the plaintiff's burden is to "place substantial evidence in the record that common issues predominate." (*Id.* at p. 1108, italics omitted.) The *Lockheed* court ruled that "[t]aken as a whole, the medical expert testimony plaintiffs presented in support of their motion for class certification is too qualified, tentative and conclusionary to constitute substantial evidence . . . ." (*Id.* at p. 1111.) The court did not mention the absence of relevant and factual bases underlying the expert testimony.

24

(Code Civ. Proc., § 437c, subd. (d) [opposing summary judgment declarations "shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations. *An objection based on the failure to comply with the requirements of this subdivision, if not made at the hearing, shall be deemed waived,*" italics added].)  PODS did not object to this paragraph below, and strictly construing its submissions as we must (*Mackey v. Board of Trustees of California State University*, *supra*, 31 Cal.App.5th at p. 657), we will not extend PODS's objections to paragraph Nos. 28, 29 and 30 of Grill's declaration to paragraph No. 31, in which Grill states his factual conclusions about PODS undertaking the obligation to act as a motor carrier and his opinion about PODS's liability.

PODS also forfeited its arguments concerning assertedly improper foundation for Grill's opinion, including its claim that the matters on which he relied are not of a type reasonably relied upon by a trucking expert. Again, we must take a strict view of PODS's papers, and resolve " 'any evidentiary doubts or ambiguities in plaintiff[s'] favor.' " (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 100; see *Tverberg v. Fillner Construction, Inc.* (2010) 49 Cal.4th 518, 522.)  PODS's objection below was different: that Grill was not competent to testify about "statutory and regulatory violations," because they were issues of law.

Thus, our review is limited to assessing the court's evidentiary ruling on Grill's statements concerning moving companies' registration obligations and legal requirements for operation, as well as Grill's recitation of the federal regulations definition of a shipper in paragraph Nos. 28 and 30 of his declaration.  PODS's objections as to statutory violations or improper legal conclusions under *Summers* do not extend to Grill's factual statements and

25

observations about PODS's order confirmations.  We address those objections and PODS's reliance on *Summers*, *supra*, 69 Cal.App.4th 1155 below.

4. *Grill's Statements Regarding Moving Company Legal Requirements or the Definition of a Shipper Are Not Inadmissible*

There is no issue as to Grill's qualifications.  PODS does not dispute Grill's knowledge of and extensive experience in the trucking industry, in which he has worked for over 50 years.  In part, Grill stated he had authored more than 15 books and hundreds of articles on trucking, truck driving, heavy equipment operation, and United States Department of Transportation regulatory compliance.  He stated he had developed and designed truck driver training curriculum; provided consulting services for fleets, industry, and government; managed a fleet of tractor-trailers and 180 truck driving instructors; served as liaison to the Department of Transportation; and supervised special training programs under Department of Transportation contracts and government grants, including a Federal Motor Carrier Safety Administration research project pertaining to the development of a safety culture in new entrant motor carriers.  He stated he had testified in many state courts as a qualified expert concerning safe operation of commercial motor vehicles as well as commercial vehicle operator's/motor carriers' standard of care.  Grill stated:  "As a result of my above-mentioned extensive knowledge, training, education and experience, I have become well familiar with the applicable standards of care during the last 20 years for the appropriate and proper operations and conduct of freight brokers and motor carriers within the United States [and] . . . have become well familiar with the differences and legal obligations between motor carriers and brokers."  Grill explained he had been retained to form opinions on the conduct and actions of the defendants, "including whether they complied with appropriate

26

standards of care in the industry in connection with the interstate transportation of a certain load of personal property of various individuals" at issue in the lawsuit.

This foundation served as the basis for Grill's averments about the requirements for moving companies to have motor carrier operating authority and brokering authority, as well as the federal regulations definition of a "shipper," matters that are outside a layperson's knowledge.  An expert may offer opinion on a subject that is "sufficiently beyond common experience" in order to assist the trier of fact.  (See Evid. Code, § 801; *Menifee v. Superior Court of Santa Clara County* (2020) 57 Cal.App.5th 343, 360.)  And an expert may "state on direct examination the reasons for his opinion and the matter . . . upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion."  (Evid. Code, § 802.)  Expert opinion testimony "that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact."  (Evid. Code, § 805.)

*Summers* does not compel exclusion of Grill's general averments concerning moving companies' legal obligations and the Code of Federal Regulation's definition of a shipper.  PODS's analysis of *Summers*'s holding is cursory, and limited to its general statement that, "Even if an expert's opinion does not go to a question of law, it is not admissible if it invades the province of the jury to decide a case."  (*Summers, supra,* 69 Cal.App.4th at p. 1182.)  According to PODS, Grill's assertions about "what PODS was 'obligated' (i.e., had a duty) to do" and that PODS " 'accepted these loads under its authority as a motor carrier' " run afoul of *Summers*.

*Summers* explained in the context of trial testimony that a "*lawyer-expert* who expounds on the law usurps the role of the trial court."  (*Summers*,

27

*supra*, 69 Cal.App.4th at p. 1160, italics added.) The case involved a question of "the proper role of expert testimony *in a trial*, especially when the purported expert is a lawyer." (*Id*. at p. 1178, italics added.) This court has previously acknowledged that *Summers* is "distinguishable for its extremes." (*People v. Lowe* (2012) 211 Cal.App.4th 678, 686.) We said, "The expert in the *Summers* case, a lawyer in the transportation field, went far beyond identifying the statutory criteria underpinning his opinions. He testified to 'issues of law . . . almost too numerous to list,' including that specific actions were illegal, specific contracts were illegal, and one party was liable for another part[y's] actions under the doctrine of nondelegable duty, respondeat superior and negligent hiring. [Citation.] Rather than provide the jury with information to consider and weigh in reaching a decision, the expert usurped the jury's role by weighing the evidence and drawing the conclusions himself. Essentially, the expert 'was *advocating*, not *testifying*.' " (*Lowe,* at p. 686.) The *Summers* court held the lawyer expert "made plaintiff's closing argument from the witness stand," a "misuse" of expert witnesses. (*Summers*, at p. 1185.)

This case, still in the summary judgment stage, is not *Summers*. Here, Grill in paragraph Nos. 28 and 30 of his declaration generally identified the statutory criteria underpinning his opinions, giving a reasoned explanation for them. The fact he "utilized the statutory language to frame [his] opinions" does not render them inadmissible. (Accord, *People v. Lowe, supra*, 211 Cal.App.4th at p. 685 [" 'It is no more an invasion of the province of the jury for an expert to give his opinion that an accused is insane including the correct legal test than for him to give his opinion merely that the accused is insane. It cannot fairly be argued that any prejudice is caused the accused by allowing the jury to know the basis upon which the expert has reached his

28

conclusions and the grounds therefor' "].) Contrary to PODS's arguments, Grill in paragraph No. 28 did not specify PODS's obligations, but spoke generally to the obligations of "[m]oving companies that offer interstate transportation services" or "moving companies that obligate themselves to the transportation of the load . . . ." Grill's statement that in view of PODS's advertising to customers and representations made by its employees, "PODS . . . accepted these loads under its authority as a motor carrier" is a factual, not a legal, conclusion. In the summary judgment context, we are to liberally construe the opposing party's evidence, including the admissibility of expert testimony and its sufficiency to create a triable issue of fact. (See *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 189; *Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512, 524.) Doing so here compels us to conclude the court erred by sustaining PODS's objections to paragraph Nos. 28, 29 and 30 of Grill's declaration. Though Grill went on to say in paragraph No. 31 that PODS was "liable for all injuries arising out of the incident as if it was the motor carrier transporting the goods at the time of the incident," as we have stated, PODS did not object to that portion of Grill's declaration.[11]

### III. *The Motor Carrier Issue*

In moving for summary judgment, PODS stated it expected plaintiffs to argue it was vicariously liable because it was licensed as a motor carrier at the time of the subject accident, stating that "[u]nder both California and federal law, a motor carrier remains vicarious[ly] liab[le] for the negligence of all drivers or sub-carriers in the chain of privity under it." PODS argued, however, the fact it possessed registration as a motor carrier at the time of

---

[11] Accordingly, we express no opinion on the admissibility of Grill's specific liability opinion at trial, over which the trial court will exercise its gatekeeping duties.

29

the subject accident was "irrelevant because it was not functioning as [a] motor carrier when the accident occurred."  PODS presented a declaration from Brian Watts, its Senior Manager of Logistics and PODS's person most knowledgeable about shipments between PODS storage centers.  In part Watts averred, "PODS does not act as a motor carrier for shipments between storage centers."

This evidence was countered by Grill's conclusions, including his specific opinion that PODS undertook to operate as a motor carrier in connection with the transportation of the goods involved in the accident.  We are not to decide the merits of this issue, but merely whether there are disputed issues of fact.  (*Palm Springs Villas II Homeowners Assn., Inc. v. Parth* (2016) 248 Cal.App.4th 268, 280.)  Having decided the court improperly sustained PODS's objections to Grill's declaration, we conclude the record presents a disputed question for a trier of fact as to whether PODS acted as a motor carrier with regard to the shipment involved in the accident that is the subject of this lawsuit.

As PODS recognized in moving for summary judgment, a motor carrier remains liable for the negligence of its subcontractors under the theory that their duties to the public are not delegable.  "Highway common carriers may not . . . insulate themselves from liability for negligence occurring in the conduct of their business by engaging independent contractors to transport

freight for them." (*Eli v. Murphy* (1952) 39 Cal.2d 598, 601;[12] see also

*Vargas v. FMI, Inc.* (2015) 233 Cal.App.4th 638, 649-650 [discussing doctrine

and *Murphy*]; *Serna v. Pettey Leach Trucking, Inc.*, *supra*, 110 Cal.App.4th at

p. 1486 [the rule is that a carrier who undertakes an activity (1) which can be

lawfully carried on only under a public franchise or authority and (2) which

involves possible danger to the public is liable to a third person for harm

caused by the negligence of the carrier's independent contractor]; *Castro v.*

*Budget Rent-A-Car System, Inc.* (2007) 154 Cal.App.4th 1162, 1178 [*Serna*

"presented the paradigm in which a shipper contracts with a carrier

operating under a franchise to transport the shipper's goods interstate, and

the carrier arranges for a subcontractor to perform the transportation

services on the carrier's behalf.  Under the nondelegable duty doctrine . . . the

carrier is treated in such cases as if it owned the truck and employed the

driver for purposes of determining the carrier's liability for the negligence of

the subcontractor"]; *Gamboa v. Conti Trucking* (1993) 19 Cal.App.4th 663,

665-666; *Milsap v. Federal Express Corp.* (1991) 227 Cal.App.3d 425, 434

[acknowledging doctrine and discussing *Murphy*]; Rest.2d Torts, § 428 ["[a]n

---

12    The California Supreme Court in *Eli v. Murphy*, *supra*, 39 Cal.2d 598 stated:  "The effectiveness of safety regulations is necessarily impaired if a carrier conducts its business by engaging independent contractors over whom it exercises no control.  If by the same device it could escape liability for the negligent conduct of its contractors, not only would the incentive for careful supervision of its business be reduced, but members of the public who are injured would be deprived of the financial responsibility of those who had been granted the privilege of conducting their business over the public highways." (*Eli v. Murphy*, at p. 600; see also *id*. at p. 601 ["In view of the more extensive and regular operations of highway common carriers as compared with others, the Legislature could reasonably conclude that the safety of their operations is of special importance and legislate accordingly. Highway common carriers may not, therefore, insulate themselves from liability for negligence occurring in the conduct of their business by engaging independent contractors to transport freight for them"].)

individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity"].)

In *Eli v. Murphy*, the court explained that a highway common carrier, subjected to public regulatory powers, is engaged in a " 'business attended with very considerable risk' " and the effectiveness of safety regulations is necessarily impaired if a carrier conducts its business by engaging independent contractors over whom it exercises no control. (*Eli v. Murphy*, *supra*, 39 Cal.2d at pp. 599-600.) "Accordingly, both to protect the public from financially irresponsible contractors, and to strengthen safety regulations, it is necessary to treat the carrier's duties as nondelegable." (*Id.* at p. 600.) "Were the rule otherwise, a carrier could escape liability for the negligence of its independent contractors, thus reducing the incentive for careful supervision and depriving those who are injured of the financial responsibility of those to whom the privilege was granted. For these reasons, the carrier's duties are nondelegable . . . ." (*Serna v. Pettey Leach Trucking, Inc.*, *supra*, 110 Cal.App.4th at p. 1486.)

PODS recognizes that plaintiffs' negligence and vicarious liability causes of action are based on the premise that it acted as a motor carrier in connection with the specific transaction. Given plaintiffs' evidence raises a triable issue for the jury on this question, we conclude summary judgment was inappropriately granted on those causes of action.

IV. *PODS's Arguments*

32

PODS makes a series of arguments that do not persuade us to change our conclusion. Some—as to the evidence "indisputably" showing PODS was not a motor carrier—are premised on PODS's position that the court properly excluded the objected-to evidence discussed above. Some argue the merits of issues, such as whether PODS was a shipper of the storage containers.

PODS further argues we should affirm the summary judgment because issue preclusion bars plaintiffs' arguments about its motor carrier status. Specifically, it maintains a now-final summary judgment in TQL's favor constitutes an "appealable judgment disposing of all claims on the merits" on the necessarily-decided identical issue. But as plaintiffs' point out and we agree, PODS did not present this argument or theory to the trial court, and we may not consider it for the first time on appeal. (Accord, *Meridian Financial Services, Inc. v. Phan, supra*, 67 Cal.App.5th at pp. 699-700.) We may affirm a summary judgment regardless of the court's stated reasons, but only if correct on a "ground the parties had an adequate opportunity to address below." (*Hassaine v. Club Demonstration Services, Inc.* (2022) 77 Cal.App.5th 843, 850, citing *Staats v. Vinter's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 832.)

PODS contends plaintiffs neither pleaded the "regulated hirer exception" nor raised it in opposing summary judgment.[13] Though plaintiffs state in their opening appellate brief the "regulated hirer exception" was not

---

[13] We have found one California case—*Secci v. United Independent Taxi Drivers, Inc.* (2017) 8 Cal.App.5th 846, 860—using the phrase "regulated hirer exception" to refer to one of several exceptions to the general rule that a company is not liable for the negligent acts of its independent contractors. (*Id.* at pp. 859-860.) *Secci* did so by reference to *Eli v Murphy, supra*, 39 Cal.2d 598 and *Vargas v. FMI, Inc., supra*, 233 Cal.App.4th at page 644, both of which deal with regulated trucking companies' inability to delegate their public responsibilities by using independent contractors, the very argument made by plaintiffs in opposing summary judgment.

raised in the trial court, the record is to the contrary. Plaintiffs very specifically argued in their opposing summary judgment papers that "[u]nder both California and federal law, a motor carrier retains vicarious liability for the negligence of all drivers or sub-carriers in the chain of privity under it," citing section 428 of the Restatement Second of Torts, *Eli v. Murphy*, *supra*, 39 Cal.2d at page 601, *Serna v Pettey Leach Trucking, Inc.*, *supra*, 110 Cal.App.4th 1475 and other cases mentioned above. They quoted *Serna*'s summary of the rule, and the underlying policy for it. PODS itself acknowledged in its reply papers below that "the linchpin of plaintiffs' argument in opposition to [its] motion" was that PODS could be considered a motor carrier, and that plaintiffs argued PODS's vicarious liability arose on grounds it acted as a motor carrier. PODS did not argue the complaint failed to plead a nondelegable duty theory, nor could it given plaintiffs' claim for vicarious liability based on general allegations that each defendant was an independent contractor of their codefendants, and was negligent in the selection, hiring, training control and supervision of every other defendant.

## DISPOSITION

The judgment is reversed as to plaintiffs' causes of action for negligence and vicarious liability and the matter remanded with directions that the trial court enter summary adjudication only of plaintiffs' third cause of action for violations of 49 United States Code sections 13901 and 14916(c)(2). The parties shall bear their own costs on appeal.

                                                                    O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.